IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-174-D

| | |
|---|---|
| SSGT GARRETT BURN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| LEND LEASE (US) PUBLIC | ) |
| PARTNERSHIPS LLC, et al., | ) |
| | ) |
| Defendants. | ) |

On September 18, 2020, Staff Sergeant Garrett Burn and his wife Kalie Burn ("the Burns"),

and Corporal William Lewis and his wife Lakin Lewis ("the Lewises"; collectively "plaintiffs"),

filed a complaint alleging claims under N.C. Gen. Stat. §§ 75.1–1 et seq. ("UDPTA") and N.C. Gen.

Stat. §§ 42-38, et seq. ("RRAA"); North Carolina law claims for breach of contract, negligence, and

nuisance; and claims for declaratory and injunctive relief against Lend Lease (US) Public

Partnerships LLC ("Lend Lease"), Lend Lease (US) Public Partnerships Holdings LLC ("Lend Lease

Holdings"), AMCC Managing Member LLC ("AMCC Managing Member"), Atlantic Marine Corps

Communities, LLC ("AMCC"), AMCC Property Management LLC ("AMCC Properties"), Atlantic

Marine Corps Communities Property Management, LLC ("AMCC Property Management"), Winn

Management Group LLC ("Winn"), and WR South LLC ("WR South"; collectively "defendants")

[D.E. 1].[1]  As explained below, the court grants in part and denies in part defendants' motion to

dismiss for failure to state a claim.

_____

[1] The clerk shall amend the caption. First SGT Scott Johnson and Lindsey Johnson are no
longer parties. See [D.E. 45].

Defendants are entities of Lend Lease and Winn, who own and manage over 4,000 housing units on Marine Corps Base Camp Lejeune ("MCB Camp Lejeune") under a 50-year ground lease with the United States Department of the Navy ("DON"). See Compl. ¶ 1. Defendants are part of a network of interconnected business activities. Specifically, Lend Lease is a Delaware limited liability company doing business in North Carolina that performed housing-related construction, renovation, or demolition work at MCB Camp Lejeune. See id. ¶ 17. Lend Lease Holdings is a Delaware limited liability company doing business in North Carolina and is the sole member of AMCC Managing Member. See id. ¶ 18. AMCC Managing Member is a Delaware limited liability company doing business in North Carolina and is an indirect subsidiary of a multinational company based in Australia also called Lend Lease. See id. ¶ 19. AMCC Managing Member and DON are the sole members of AMCC, with AMCC Managing Member controlling a two-thirds interest in AMCC. See id. ¶¶ 19, 21. AMCC is a Delaware limited liability company doing business in North Carolina that was formed on May 16, 2005, in connection with Lend Lease winning the bid to provide privatized military housing at MCB Camp Lejeune. See id. ¶¶ 20–21. AMCC Properties and AMCC Property Management are Delaware limited liability companies doing business in North Carolina. See id ¶¶ 22–24. AMCC Property Management is a division of Winn. See id. ¶ 24. Winn is a Massachusetts limited liability company doing business in North Carolina. See id. ¶ 25. WR South is a Delaware limited liability company doing business in North Carolina by assisting Winn with real estate management on MCB Camp Lejeune. See id. ¶ 26.

Plaintiffs are service members and their spouses who lived in defendants' privatized military housing at MCB Camp Lejeune between 2015 and 2019. See id. ¶¶ 7–15. Specifically, on August 7, 2018, the Burns executed a form lease with AMCC for a rental home at 6855 Omaha Road,

Jacksonville, North Carolina 28543. See id. ¶¶ 10–12. On October 9, 2019, the Lewises executed a form lease with AMCC for a rental unit located at 1237 Monarch Court, Jacksonville, North Carolina 28543. See id. ¶¶ 13–15.

Each form lease listed as parties AMCC and the respective plaintiffs. See id. ¶¶ 24, 43. AMCC was listed as "Owner" and the plaintiffs as "Resident." See [D.E. 21-2] 3.[2] Additionally, the lease listed AMCC Properties as AMCC's "Agent." See id. The lease stated that AMCC was obligated to provide quality housing and property management and was "responsible for maintenance and repair of the Premises, and for ensuring that the Premises are safe and habitable." Id. at 5; Compl. ¶¶ 43–44. In exchange, plaintiffs agreed "to pay monthly Rent equal to the Basic Allowance for Military Housing at the 'with dependent' rate (the 'BAH') at the Resident's duty station of the pay grade of the Resident service member." Compl. ¶ 48 (quoting [D.E. 21-2] 3).

The form lease contains a mediation provision. See [D.E. 25-15] 9. That provision states:

> **Mediation.** Owner and Resident agree to mediate any dispute or claim arising between them out of this Lease, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. The parties agree to use a mediator selected from the mediation list incorporated in the Community Guidelines and Policies. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to make reasonable efforts to resolve the matter through mediation, or refuses to mediate in good faith after a request has been made, then that party shall not be entitled to recover attorney's fees even if that party eventually prevails in the court proceeding. The following matters are excluded from this paragraph: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; (iii) any claim in an amount less than or equal to $2000; and (iv) any matter within the jurisdiction of a probate, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.

Id. The form lease also contains a choice-of-law provision. See id. at 9. That provision states, in

---

[2] Plaintiffs incorporate the form lease by reference in their complaint. See [D.E. 1] ¶¶ 11, 14. Defendants filed the form leases as an exhibit. See [D.E. 21-2].

3

relevant part:

> [T]his Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, federal substantive law, except that the following State law shall apply: the substantive laws of the State of North Carolina, including but not limited to North Carolina General Statutes, chapter 42, and the common law interpreting those statutes.

Id.

During their tenancy, plaintiffs experienced numerous problems with the residences they leased from defendants. At their residence, the Burns had standing water and moisture, the fire alarm triggering at odd hours, and problems with their HVAC system. See Compl. ¶¶ 131–33. The Burns also discovered mold throughout their home as well as evidence of moisture and water intrusion. See id. ¶¶ 134–37. When the Burns reported the problems to defendants, defendants made ineffectual repairs that failed to abate the mold. See id. ¶ 138. The Burns now suffer from health issues related to the moldy conditions in their home. See id. ¶ 147.

The Lewises experienced a roach infestation and a faulty HVAC system. See id. ¶¶ 152–71. When the Lewises reported these problems to defendants, defendants made service visits to their residence. The vendor addressing the roach infestation told the Lewises that defendants limited his service calls to 15 minutes at defendants' properties. See id. ¶ 165. The vendors addressing the Lewises's HVAC problems failed to make proper repairs and exacerbated the HVAC system's problems. See id. ¶ 170. The Lewises also discovered mold in their home. See id. ¶ 172. Defendants attempted to address the mold problems but failed to address the root cause of the problem. See id. ¶ 173.

In addition to conduct associated with the problems in plaintiffs' residences, Congress and the Government Accountability Office ("GAO") investigated defendants for various misrepresentations related to their privatized military housing, including during the periods

4

associated with plaintiffs' issues. Specifically, plaintiffs cite a 2020 GAO investigation concluding that Lend Lease and Winn conducted, sponsored, and participated in misleading resident satisfaction surveys resulting in defendants receiving government performance bonuses and incentive payments. See id. ¶¶ 5, 72. GAO investigations also revealed that AMCC, Lend Lease, and Winn maintained false or misleading customer service and repair and maintenance records, which plaintiffs allege continued during their residency period. See id. ¶¶ 5, 73–82. Together, these misrepresentations allowed defendants to keep costs low and generate greater revenue from their privatized military housing. See id. ¶ 75.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

5

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

This court has subject-matter jurisdiction based on diversity. See 28 U.S.C. § 1332. Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

In resolving the dispute, this court applies North Carolina substantive law.[3] Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court

---

[3] The parties' lease contains a choice-of-law provision stating "this Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, federal substantive law, except that the following State law shall apply: the substantive laws of the State of North Carolina, including but not limited to North Carolina General Statutes, chapter 42, and the common law interpreting those statutes." [D.E. 25-15] 9.

of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted).[4] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

This action also requires the court to address class allegations. A plaintiff seeking class certification under Federal Rule of Civil Procedure 23 must first satisfy Rule 23(a)'s prerequisites. Under Rule 23(a), class certification is appropriate if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If a plaintiff has satisfied the Rule 23(a) prerequisites, the plaintiff then also must show that "class certification is proper under one of the subdivisions of Rule 23(b)." McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 475 (E.D.N.C. 2010); see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). The party seeking class certification bears the burden of proof. See Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001); McLaurin, 271 F.R.D. at 475.

---

[4] North Carolina has no mechanism for certifying questions of state law to the Supreme Court of North Carolina. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

Case 7:20-cv-00174-D   Document 46   Filed 09/13/21   Page 7 of 22

A motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient for a class. See Bigelow v. Syneos Health, LLC, No. 5:20-CV-28-D, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020) (unpublished); Williams v. Potomac Family Dining Grp. Op. Co., No. GJH-19-1780, 2019 WL 5309628, at *5 (D. Md. Oct. 21, 2019) (unpublished). Generally, however, courts do not dismiss class allegations at the pleadings stage but instead allow for pre-certification discovery before making a certification decision under Federal Rule of Civil Procedure 23(c)(1). See Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008); Goodman v. Schlesinger, 584 F.2d 1325, 1332 (4th Cir. 1978).

## III.

Defendants move to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) and argue that dismissal is warranted because: (1) plaintiffs' failed to engage in pre-suit mediation; (2) the complaint fails to distinguish among defendants as required by Federal Rule of Civil Procedure 8(a); (3) the federal-enclave doctrine bars all claims; (4) plaintiffs' UDPTA claim fails to comply with Federal Rule of Civil Procedure 9(b); (5) plaintiffs' breach of contract claim cannot proceed against defendants who are nonparties to the leases; (6) North Carolina nuisance law does not provide a cause of action by a tenant against a landlord; and (7) plaintiffs' declaratory and injunctive relief claim fails to the extent it relies on a theory of unjust enrichment. See [D.E. 21] 10–25. Defendants also move to strike plaintiffs' class allegations. See id. at 25–29.

## A.

Defendants argue that the lease's mediation provision warrants dismissal of the complaint. See id. at 10–13. Under North Carolina law, interpreting a written contract is a question of law for the court. See Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960);

8

*Brown v. Between Dandelions, Inc.,* 273 N.C. App. 408, 410, 849 S.E.2d 67, 70 (2020), disc. review denied, 376 N.C. 900, 854 S.E.2d 796 (2021); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). "[T]he court may not ignore or delete any of [the contract's] provisions, nor insert words into it, but must construe the contract as written, in light of the undisputed evidence as to the custom, usage, and meaning of its terms." *Martin v. Martin,* 26 N.C. App. 506, 508, 216 S.E.2d 456, 457–58 (1975); see T.M.C.S., Inc. v. Marco Contractors, Inc., 244 N.C. App. 330, 341–42, 780 S.E.2d 588, 597 (2015). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Hemric v. Groce,* 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (2005); see Potter v. Hilemn Laby's, Inc., 150 N.C. App. 326, 331, 564 S.E.2d 259, 263 (2002); Bicket v. McLean Secs., Inc., 124 N.C. App. 548, 552, 478 S.E.2d 518, 521 (1996).

The parties' lease states:

> **Mediation.** Owner and Resident agree to mediate any dispute or claim arising between them out of this Lease, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. The parties agree to use a mediator selected from the mediation list incorporated in the Community Guidelines and Policies. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to make reasonable efforts to resolve the matter through mediation, or refuses to mediate in good faith after a request has been made, then that party shall not be entitled to recover attorney's fees even if that party eventually prevails in the court proceeding. The following matters are excluded from this paragraph: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; (iii) any claim in an amount less than or equal to $2000; and (iv) any matter within the jurisdiction of a probate, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.

[D.E. 25-15] 9. The plain language of the lease's mediation provision requires the parties to "make reasonable efforts to resolve [any dispute or claim to which this paragraph applies] through mediation." Id. Where a party fails to make reasonable efforts to mediate, the clause provides a

9

remedy: "that party shall not be entitled to recover attorney's fees even if that party eventually prevails in the court proceeding." Id.

Defendants argue that plaintiffs' failure to mediate before commencing this action requires the court to dismiss this action. See [D.E. 21] 10–13. The mediation provision, however, is not a condition precedent to litigation. It is a condition precedent to attorney's fees. After all, the mediation provision remedies the failure to mediate solely by precluding recovery of attorney's fees. See [D.E. 25-15] 9. As such, even if the plaintiffs failed to mediate, that failure does not require dismissal of this action. Alternatively, construing the facts contained in the complaint and all reasonable inferences therefrom in a light most favorable to plaintiffs, plaintiffs engaged in "reasonable efforts" to resolve this dispute through mediation. See Compl. ¶¶ 175–78. Accordingly, the lease's mediation provision does not require dismissal of this action.[5]

## B.

Defendants contend that the court should dismiss the complaint for failure to comply with Federal Rule of Civil Procedure 8(a). See [D.E. 21] 13–14. Rule 8(a) provides, in part, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a)'s requirements are calculated to

---

[5] Defendants cite Hometown Servs., Inc. v. Equitylock Sols., Inc., No. 1:13-cv-00304-MR-DLH, 2014 WL 4406973, at *1–3 (W.D.N.C. Sept. 5, 2014) (unpublished), and argue that the mediation provision requires dismissal. In Hometown, however, the mediation provision stated "any controversy, claim, or dispute arising under or relating to this [a]greement, shall first be subject to mediation in Buncombe County, NC . . . and then finally be settled in a court of competent jurisdiction as set forth herein." See Ex. A at 4, Hometown Servs., Inc. v. Equitylock Sols., Inc., No. 1:13-cv-00304-MR-DLH, [D.E. 14-1] (W.D.N.C. Dec. 16, 2013) (unpublished). That provision provided no remedy for failing to mediate, and the court interpreted the provision to require mediation before litigation. See Hometown, 2014 WL 4406973, at *2. In contrast, the mediation provision in this case provides a remedy for failing to mediate: the party shall not be entitled to recover attorney's fees. See [D.E. 25-15] 9. Thus, the mediation provision at issue in this case is a condition precedent to recovering attorney's fees, not a condition precedent to litigation.

10

"give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests."
Twombly, 550 U.S. at 555 (quotation omitted); see Swierkiewicz v. Sorema N. A., 534 U.S. 506,
512 (2002); Shepherd v. City of Shreveport, 920 F.3d 278, 287 (5th Cir. 2019); Venkatraman v. REI
Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). Generally, "collective allegations are not prohibited
by [Rule 8(a)]. Rather, the allegations must simply provide [d]efendants with fair notice of the
claims against them." Walker v. Apex Wind Constr. LLC, No. CIV-14-914-D, 2015 WL 348778,
at *3 (W.D. Okla. Jan. 26, 2015) (unpublished); see Bryant v. Wells Fargo Bank, Nat'l Ass'n, 861
F. Supp. 2d 646, 660 (E.D.N.C. 2012); Davis v. Bowens, No. 1:11CV691, 2012 WL 2999766, at *3
(M.D.N.C. July 23, 2012) (unpublished).

Defendants argue that plaintiffs' failure to sufficiently distinguish among defendants in their
complaint requires the court to dismiss the complaint. See [D.E. 21] 14–15. The complaint first lists
each defendant and then states that "each of the [d]efendants has acted as a joint tortfeasor, agent of
the others, joint venture participant, or has otherwise engaged in, and aided and abetted one another
in, the joint enterprise of leasing military housing at MCB Camp Lejeune .... [and] there existed
a unity of interest and ownership among [d]efendants ... and each such entity may fairly be deemed
the alter ego of each other entity." Compl. ¶¶ 16–29. The complaint then makes collective
allegations against "Defendants" without, in many instances, further identifying the individual
defendants. See, e.g., id. ¶¶ 215, 226, 232, 244.

Plaintiffs' complaint does not fail to provide defendants with fair notice of the claims against
them. See, e.g., Walker, 2015 WL 348778, at *3 (holding that a complaint is not deficient for
making collective allegations that fail to distinguish among defendants where the complaint sues
each defendant "independently and as alter ego and/or agent of each of the other Defendants" and
where the complaint alleged noncomplex claims, including nuisance and trespass (quotation

11

omitted)). Rather, the complaint fairly notifies defendants of each of plaintiffs' claims, all arising from defendants' conduct at MCB Camp Lejeune. See Compl. Accordingly, Rule 8(a) does not warrant dismissal of this action.

## C.

Defendants argue that the federal-enclave doctrine bars plaintiffs' claims and requires dismissal of the complaint. See [D.E. 21] 15–19. The federal-enclave doctrine provides that when "the United States acquires with the consent of the state legislature land within the borders of that State . . . the jurisdiction of the Federal Government becomes exclusive." Allison v. Boeing Laser Tech. Servs., 689 F.3d 1234, 1236 (10th Cir. 2012) (quotations omitted); see Paul v. United States, 371 U.S. 245, 264 (1963). Under the doctrine, "those state laws that existed at the time the enclave was ceded to the federal government remain in force." Allison, 689 F.3d at 1237. Thus, "even though state law will not remain static outside the enclave, any changes made to the state law applicable within the enclave must be a matter of federal law." Id.; see James Stewart & Co. v. Sadrakula, 309 U.S. 94, 99–100 (1940).

Defendants contend that all of the claims alleged in the complaint are made under North Carolina law not in existence in 1941, the year the federal government acquired MCB Camp Lejeune from North Carolina. See [D.E. 21] 15–19. Defendants then argue that the federal-enclave doctrine requires the court to dismiss the complaint. See id.

The court need not reach defendants' argument regarding the federal-enclave doctrine because of the lease's choice-of-law provision. See [D.E. 25-15] 9. The applicable choice-of-law rules govern the enforceability of a choice-of-law provision. See Francis v. Allstate Ins. Co., 709 F.3d 362, 369 (4th Cir. 2013); Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 600–01 (4th Cir. 2004). When exercising diversity jurisdiction, federal courts must apply the choice-

12

of-law rules of the state in which the court sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) superseded by statute on other grounds; Francis, 709 F.3d at 369; DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013); Braswell Egg Co. v. Poultry Mgmt. Sys., Inc., 481 F. Supp. 3d 528, 536 (E.D.N.C. 2020). Under North Carolina law, contractual choice-of-law provisions are enforceable. See Curtis v. GE Cap. Corp., No. 5:12CV133-RLV, 2013 WL 4212932, at *3 (W.D.N.C. Aug. 15, 2013) (unpublished); Perkins v. CCH Computax, Inc., 333 N.C. 140, 141, 423 S.E.2d 780, 781 (1992), superseded by statute on other grounds, N.C. Gen. Stat. § 22B-3; Park v. Merrill Lynch, 159 N.C. App. 120, 122–23, 582 S.E.2d 375, 378 (2003).

The choice-of-law provision in the lease states, in relevant part:

[T]his Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, federal substantive law, except that the following State law shall apply: the substantive laws of the State of North Carolina, including but not limited to North Carolina General Statutes, chapter 42, and the common law interpreting those statutes.

[D.E. 25-15] 9. The plain language of the lease's choice-of-law provision states that North Carolina state law governs the parties' contractual relationship, and it does not limit the application of North Carolina law to those laws as they stood in 1941. See id. Thus, plaintiffs may allege claims under contemporary North Carolina law and defendants' argument fails.

In opposition, defendants cite N.C. Gen. Stat. § 104-7(b). Section 104-7(b) states that North Carolina cedes "[e]xclusive jurisdiction in and over any land acquired by the United States with the consent of the State . . . for all purposes for which the United States requests cession of jurisdiction." N.C. Gen. Stat. § 104-7(b). Defendants, however, do not allege that the United States requested cession of jurisdiction regarding the subject matter of this case. Moreover, even if defendants had so alleged, defendants' argument fails because interpreting the choice-of-law provision to preclude application of North Carolina substantive law by operation of N.C. Gen. Stat. § 104-7(b) would

13

violate the intention of the parties in the lease to apply North Carolina substantive law to the parties' contractual relationship. See [D.E. 25-15] 9 (stating that "the substantive laws of the State of North Carolina, including but not limited to North Carolina General Statutes, chapter 42, and the common law interpreting those statutes" govern the parties' contractual relationship); see also Hemric, 169 N.C. App. at 76, 609 S.E.2d at 282; Potter, 150 N.C. App. at 331, 564 S.E.2d at 263; Bicket, 124 N.C. App. at 552–53, 478 S.E.2d at 521.

## D.

Defendants argue that the court should dismiss plaintiffs' UDTPA claim because it fails to comply with Federal Rule of Civil Procedure 9(b)'s pleading requirements. See [D.E. 21] 19–21. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotations omitted); see Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison, 176 F.3d at 783 n.5. Nonetheless, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Edmonson, 922 F.3d at 553 (quotation omitted); see Harrsion, 176 F.3d at 784.

The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen.

14

Stat. § 75-1.1(a). Fraud may support a UDTPA claim. See Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 729 (M.D.N.C. 2015) (stating "fraud is, by definition, unfair and deceptive"). A UDTPA claim, however, may sound more broadly than fraud. See Gress v. Rowboat Co., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (holding that to prevail on a UDTPA claim, "it is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." (alteration and quotations omitted)); Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981) ("A trade practice is actionable if it is unfair, and the concept of unfairness is broader than and includes the concept of deception" (alteration and quotations omitted)). For Rule 9(b)'s particularity requirements to apply, the court must determine whether plaintiffs' UDTPA claim sounds in fraud or in some other actionable conduct. See Cross v. Ciox Health, LLC, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020) (holding that Rule 9(b)'s requirements applied to plaintiffs' UDTPA claim only after determining that the claim was based on defendant's "fraudulent statements").

Plaintiffs' UDTPA allegations concern defendants' representations and business practices for housing services and amenities. See Compl. ¶¶ 200–62. To the extent that plaintiffs' UDTPA claim relies on defendants' nondeceptive conduct, including defendants' alleged breach of the implied warranty of habitability, violations of the RRAA, or offering, marketing, and leasing substandard residential housing, those allegations concern unfair business practices that sound more broadly than fraud and are not subject to Rule 9(b)'s heightened pleading requirements. See id. ¶ 204; Gress, 190 N.C. App. at 776, 661 S.E.2d at 281; Overstreet, 52 N.C. App. at 452–53, 279 S.E.2d at 7. To the extent plaintiffs allege that defendants made "false and misleading" representations on which plaintiffs relied to their detriment, those claims sound in fraud and Rule

9(b)'s heightened pleading requirements apply. See Compl. ¶¶ 47, 209; Topshelf Mgmt., Inc., 117

F. Supp. 3d at 731 ("[T]his court need not decide whether Rule 9(b) governs all section 75–1.1

claims . . . [however,] Rule 9(b) applies to section 75–1.1 claims alleging detrimental reliance on

false or deceptive representations.").

As for plaintiffs' allegations regarding defendants' "false and misleading" representations,

plaintiffs must plead the "time, place, and contents of the false representations, as well as the identity

of the person making the misrepresentation and what he obtained thereby." Harrison, 176 F.3d at

784; see Edmonson, 922 F.3d at 553. Here, plaintiffs have complied with Rule 9(b). As for the

misrepresentations regarding quality residential housing, the complaint details how AMCC and

AMCC Properties made false representations of providing quality residential housing in exchange

for plaintiffs' BAH at the time they signed their leases during the class period. See Compl. ¶¶ 5,

46–48. In return for these misrepresentations, defendants obtained plaintiffs' full BAH. See id. ¶¶

2, 48. As for the misrepresentations regarding resident satisfaction surveys, the complaint describes

how Lend Lease and Winn conducted, sponsored, and participated in those surveys during the class

period as detailed in the GAO's 2020 investigation. See id. ¶¶ 5, 69–72. In return, plaintiffs allege

that defendants received performance bonuses and incentive payments from the government. See

id. ¶ 72. As for the misrepresentations concerning customer service and repair and maintenance

records, the complaint describes how AMCC, Lend Lease, and Winn maintained false or misleading

records in the manner detailed in the GAO's investigative records. See id. ¶¶ 5, 73–78. In return,

defendants kept costs low and generated greater revenue. See id. ¶ 75. In light of these allegations,

the court denies defendants' motion to dismiss plaintiffs' UDTPA regarding defendants'

misrepresentations.

Alternatively, the court "is satisfied (1) that defendant[s] are aware of the particular

circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff[s have] substantial prediscovery evidence of those facts." Edmonson, 922 F.3d at 553 (quotation omitted); see Harrison, 176 F.3d at 784. Plaintiffs' complaint describes defendants' alleged wrongdoing sufficiently to allow defendants to prepare defenses for trial. Specifically, the allegations detail, inter alia, how (1) defendants leased residential housing in return for plaintiffs' BAH implying that defendants will provide quality housing; (2) defendants conducted, sponsored, and participated in inaccurate and misleading satisfaction surveys; and (3) defendants maintained inaccurate, incomplete, and unreliable customer service and repair and maintenance records. See [D.E. 1] ¶¶ 46–48, 55, 68–69, 71, 73–78, 92, 204–05. Additionally, plaintiffs base these allegations upon substantial prediscovery evidence, including but not limited to publicly available congressional and GAO investigative records. See id. ¶¶ 69–78, 83–93. Accordingly, the court denies defendants' motion to dismiss plaintiffs' UDTPA claim.

E.

Defendants argue that the court must dismiss plaintiffs' breach of contract claim against all parties except AMCC because AMCC is the only party to the lease agreement. See [D.E. 21] 21–23. "[A] contract cannot bind a nonparty." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002); see NRG Power Mktg., LLC v. Maine Pub. Utils. Comm'n, 558 U.S. 165, 175 n.4 (2010); Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009). Thus, in general, parties to a contract cannot maintain an action against nonparties based on the contract. See Canady v. Mann, 107 N.C. App. 252, 259, 419 S.E.2d 597, 601 (1992); see also Vitale & Assocs., LLC v. Lowden, 690 F. App'x 555, 556–57 (9th Cir. 2017) (per curiam) (unpublished); Richmond Health Facilities v. Nichols, 811 F.3d 192, 200–01 (6th Cir. 2016); Ferrante v. Westin St. John Hotel Co., 4:18-CV-108-D, 2020 WL 486198, at *6 (E.D.N.C. Jan. 29, 2020) (unpublished), appeal docketed, No. 20-1322 (4th Cir. Mar.

17, 2020). "Under North Carolina law, an authorized agent who enters into a contract on behalf of a disclosed principal generally is not personally liable to third parties for breach of contract since the contract is with the principal." Opsitnick v. Crumpler, No. 5:13-CV-835-D, 2014 WL 1682013, at *2 (E.D.N.C. Apr. 28, 2014) (unpublished) (alteration and quotation omitted); see Forbes Homes, Inc. v. Trimpi, 318 N.C. 473, 479–80, 349 S.E.2d 852, 856 (1986); Baker v. Rushing, 104 N.C. App. 240, 248, 409 S.E.2d 108, 112 (1991).

The parties' lease states:

> **Parties to Lease**: Subject to the terms and conditions of this Lease, [AMCC] rents to Resident and Resident rents from [AMCC] . . . . The Premises are managed by AMCC Property Management, LLC ("Agent") . . . . [who] is authorized to manage the Premises on behalf of [AMCC] and to give and accept notices, demands and service of process on behalf of [AMCC].

[D.E. 21-2] 3.

Plaintiffs allege that all defendants are liable for breach of contract. See [D.E. 1] ¶¶ 229–37; [D.E. 27] 17–18. Under the lease's plain language, however, only AMCC is a party to the lease. See [D.E. 21-2] 3. Although AMCC Properties is listed as AMCC's agent, this listing does not make AMCC Properties a party to the contract or liable for AMCC's alleged breach. See Crumpler, 2014 WL 1682013, at *2, Trimpi, 318 N.C. at 479–80, 349 S.E.2d at 856; Rushing, 104 N.C. App. at 248, 409 S.E.2d at 112. Moreover, the lease identifies no other defendant as a party to the lease. Cf. [D.E. 21-2] 3. Accordingly, the court dismisses plaintiffs' breach of contract claims against all defendants except AMCC.

In opposition, plaintiffs argue that AMCC Properties is liable for breach of contract as a de facto landlord. See [D.E. 27] 17–18. In support, plaintiffs cite Addi v. Corvias Management-Army, LLC, No. ELH-19-3253, 2020 WL 5076170 (D. Md. Aug. 27, 2020) (unpublished). In Addi, tenant-plaintiffs sued the property management company listed as the owner's agent in the tenant-owner

18

lease agreements for breach of contract under Maryland law. See Addi, 2020 WL 5076170, at
*20–22. The property management company moved to dismiss the breach of contract claim, but
the court denied the motion, concluding under Maryland's de facto landlord doctrine that the
plaintiffs alleged facts sufficient to survive dismissal. See id.

North Carolina has no de facto landlord doctrine. See [D.E. 37] 7; [D.E. 27] 17–18. Sitting
in diversity, this court declines to expand North Carolina public policy to adopt the doctrine. Time
Warner Ent-Advance/Newhouse P'ship, 506 F.3d at 314; see Day & Zimmermann, Inc., 423 U.S.
at 4; Wade, 182 F.3d at 286. Thus, the court dismisses the breach of contract claim against AMCC
Properties.

Plaintiffs also contend that all other defendants are liable for breach of contract because
"[d]efendants . . . [have] material involvement in Lejeune housing" and are therefore jointly and
severally liable for breach of contract. See [D.E. 27] 18. Plaintiffs do not, however, plausibly allege
that any defendant other than AMCC is a party to the leases. Cf. id.; [D.E. 1] ¶¶ 229–37.
Additionally, plaintiffs cite no authority to support their contention that the other defendants are
jointly and severally liable for breach of the leases based on their involvement in Lejeune housing.
Cf. [D.E. 27] 18. Accordingly, the court dismisses plaintiffs' breach of contract claim against all
defendants except AMCC. See, e.g., Canady, 107 N.C. App. at 259, 419 S.E.2d at 601.

F.

Defendants move to dismiss plaintiffs' temporary recurrent private nuisance claim and argue
that "private nuisance does not provide a cause of action for a tenant against his or her landlord for
the leased premises." [D.E. 21] 24. "In order to establish a claim for nuisance, a plaintiff must show
the existence of a substantial and unreasonable interference with the use and enjoyment of its
property." Shadow Grp., LLC v. Heather Hills Home Owners Ass'n, 156 N.C. App. 197, 200, 579

19

S.E.2d 285, 287 (2003); see Whiteside Estates, Inc. v. Highlands Cove, L.L.C., 146 N.C. App. 449, 455, 553 S.E.2d 431, 436 (2001). A plaintiff need not, however, "hold fee simple title . . . to recover in nuisance in every instance." In re NC Swine Farm Nuisance Litig., No. 5:15-CV-00013-BR, 2017 WL 5178038, at *4 (E.D.N.C. Nov. 8, 2017) (unpublished); see Kent v. Humphries, 303 N.C. 675, 677–79, 281 S.E.2d 43, 45–46 (1981). In North Carolina, a tenant's possessory interest is "a sufficient property interest to maintain a claim in nuisance." Kent, 303 N.C. at 679, 281 S.E.2d at 46; see Maint. Equip. Co. v. Godley Builders, 107 N.C. App. 343, 349, 420 S.E.2d 199, 202 (1992). Accordingly, the court denies defendants' motion to dismiss plaintiffs' nuisance claim.

## G.

Defendants argue that plaintiffs' claim for "declaratory and injunctive relief" fails to the extent it asserts an unjust enrichment claim because an express contract governs this dispute. [D.E. 21] 25; [D.E. 37] 8–9. Under North Carolina law, "[a]n implied contract and an express contract cannot co-exist and a party is unable to simultaneously collect damages on a breach of contract claim and an unjust enrichment claim." Niloy, Inc. v. Lowe's Cos., No. 5:16-CV-00029-RLV-DCK, 2017 WL 29338, at *8 (W.D.N.C. Jan. 3, 2017) (unpublished); see SciGrip, Inc. v. Osae, 373 N.C. 409, 432, 838 S.E.2d 334, 351 (2020); Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Accordingly, a plaintiff's unjust enrichment claim fails where a contract governs the parties' relationship. See SciGrip, Inc., 373 N.C. at 432, 838 S.E.2d at 351; Booe, 322 N.C. at 570, 369 S.E.2d at 556.

In plaintiffs' claim for declaratory and injunctive relief, plaintiffs allege that "[d]efendants have collected significant BAH and other income related to providing the deficient residential lease properties" and, therefore, plaintiffs "have conferred a benefit on [d]efendants which it would be unjust for [d]efendants to retain in whole or part, and [d]efendants have been unjustly enriched."

20

Compl. ¶ 261. Plaintiffs also request equitable, declaratory, and injunctive relief related to the parties' rights and obligations under the lease agreement, defendants' alleged violations of their landlord and property manager duties and practices, alleged misrepresentations in defendants marketing materials, sequestration of BAH payments, abatement of the alleged private nuisance, and disgorgement. See id. ¶ 262.

To the extent that plaintiffs' claim is an unjust enrichment claim against AMCC for conduct arising out of the parties' leases, the court dismisses the claim. See SciGrip, Inc., 373 N.C. at 432, 838 S.E.2d at 351; Booe, 322 N.C. at 570, 369 S.E.2d at 556. To the extent that plaintiffs' claim is one for unjust enrichment against parties other than AMCC, the claim does not fail because those defendants are not in contractual privity with plaintiffs. See [D.E. 21-2] 3.

H.

Defendants move to strike plaintiffs' class allegations. See [D.E. 21] 25–29; [D.E. 37] 9–10. A motion to strike a complaint's class allegations under Rule 12(f) should be granted when it is clear from the face of the complaint that the plaintiff cannot meet Federal Rule of Civil Procedure 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient to make out a class. See Bigelow, 2020 WL 5078770, at *4; Williams, 2019 WL 5309628, at *5. Generally, however, courts do not strike class allegations at the pleadings stage but instead allow for pre-certification discovery before making a certification decision under Federal Rule of Civil Procedure 23(c)(1). See Mills, 511 F.3d at 1309; Goodman, 584 F.2d at 1332.

Defendants move to strike plaintiffs' class allegations on basis of the allegations contained in the complaint alone. See [D.E. 21]. The court has reviewed the complaint, the arguments, and the governing law, and the court denies defendants' motion to strike plaintiffs' class allegations.

21

IV.

In sum, the court GRANTS in part and DENIES in part defendants' motion to dismiss [D.E. 20] and GRANTS plaintiffs' motions for judicial notice [D.E. 31] and leave to file supplemental authority [D.E. 38].

SO ORDERED. This 13 day of September, 2021.

Dever

JAMES C. DEVER III
United States District Judge

22